TROENDLE v. VAN NORTWICK et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 581.

1. REVIEW ON APPEAL—QUESTIONS NOT RAISED BELOW.
   A complainant cannot assign as error on appeal the action of the court in permitting the filing of a cross bill, and making an order that the original bill should stand as an answer thereto, although no process had issued thereon, where he appeared and took part in the hearing on the issues joined without objection.

2. EQUITY PLEADING—CROSS BILL—NECESSITY OF ALLEGING DEMAND.
   The failure of a cross bill for the recovery of a debt, and the enforcement of a pledge to secure the same, to allege a demand, is not ground for the reversal of a decree based thereon, where the original bill denied the indebtedness and the pledge.

3. SAME—VARIANCE—FAILURE OF PROOF.
   An allegation in a cross bill that defendant advanced to complainant a certain sum is not supported by evidence that defendant sold complainant shares of stock in a corporation equal at their par value to such sum, where there is no proof of the price agreed to be paid therefor; and that such price was the par value of the stock cannot be presumed from the fact that the corporation was newly organized under a statute prohibiting the issuance of stock except on full payment of par value therefor in money or property, where there was evidence which tended to show that the assets of the company were not in fact equal to the par value of its stock, and that defendant sold other stock for much less.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This suit was brought by the appellant, Theodore R. Troendle, against John S. Van Nortwick and others, who were merely nominal parties. It was alleged in the bill that Van Nortwick had possession of 1,120 shares of the capital stock of the Western Paper-Bag Company of Illinois, belonging to and standing in the name of Troendle, and was about to sell the stock to satisfy an in-

debtedness for the security of which he claimed to hold the shares as collateral; that there was in fact no indebtedness, and had been no pledge. The relief prayed was an injunction against the contemplated sale, an order for the delivery of the shares by Van Nortwick to Troendle, or that, in the event of a finding by the court that an indebtedness existed for which the shares had been pledged, an accounting should be had, the amount of the indebtedness determined, and a time fixed within which Troendle might redeem. In his answer Van Nortwick alleged three several indebtednesses, for which the shares had been pledged,—the largest for $44,800, alleged to have been "advanced by William M. Van Nortwick for and on behalf of the complainant and at his request," at the time the 1,120 shares of stock were issued in his name, "so that the stock of the complainant might be fully paid up stock"; the remainder of the price being the complainant's interest in the stock of the Western Paper-Bag Company of Wisconsin, which was merged in the first-named company, then organized. Issue was joined upon that answer, and on November 10, 1898, the case was heard and taken under advisement. On the ensuing 28th, Van Nortwick was allowed to file a cross bill alleging the facts averred in his answer, and praying that in default of payment of whatever sum should be found due upon his demands against Troendle by a short day, to be fixed by the court, the shares of stock held as collateral be ordered sold; and at the same time the court ordered that the original bill of the appellant stand as an answer to the cross bill. And Van Nortwick having replied thereto, and all parties being present, the court proceeded to hear the cause upon the bill, answers, and replication, and on the cross bill and the answer and replication, and, having heard the evidence offered, both oral and documentary, and the arguments of counsel, entered a final decree establishing an aggregate indebtedness of Troendle to Van Nortwick of $65,880.75, which it was ordered should be paid within sixty days, and in default thereof the pledged shares should be sold. The original bill was dismissed for want of equity.

The errors assigned and relied upon are: (1) The dismissal of the bill for want of equity. (2) The entry of a decree on the cross bill, the court having no jurisdiction for that purpose over the appellant. (3) The insufficiency of the cross bill, a demand for payment not having been alleged. (4) Variance between the allegation and proof in regard to the alleged indebtedness of $44,-800. (5) The finding of an indebtedness of $44,800 not supported by the evidence. (6) The evidence does not sustain the finding that before the filing of the bill William M. Van Nortwick assigned to John S. Van Nortwick all the indebtedness of the appellant to the former, and the five certificates for the 1,120 shares of stock. (7) The levy upon the stock of the execution in favor of Van Nortwick upon a judgment for a part of the indebtedness secured by the pledge of the stock waived the lien of the pledge.

Lewis W. Parker, for appellant.

A. J. Hopkins and F. H. Thatcher, for appellees.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is urged that the original bill should not have been dismissed, because the appellant was at least entitled to a decree thereon determining the amount of his indebtedness for which the shares of stock were pledged, and fixing a time within which he might redeem. The question is not one of substance. On the cross bill the court entered a decree determining the debt, and fixing a time for redemption, and in addition authorized, in case of default of payment, a sale of the pledged shares in discharge of the debt. It was, of course, within the discretionary power of the court to permit the filing of the cross bill. The objection that the cross bill

did not pray process, and that process was not issued and served, might be important, if the record did not show the presence and participation of the appellant in the hearing, which was upon both the original and the cross bill. While in the equity practice it is not necessary to state an exception or objection in order to preserve a question for consideration on appeal, still, "there is a large class of cases in which it has been held that objections not taken in the court below will not be allowed to be taken in this court." It was so said in Railroad Co. v. Bradleys, 10 Wall. 299, 19 L. Ed. 894; and there is not in this case, as there was in that, "such a combination of errors, and errors of so grave a character," as to make the principle inapplicable. The cross bill in this case was put at issue by the order, made plainly for the convenience, and, it is not unfair to assume, with the silent acquiescence, of the appellant, that the original bill should stand as an answer thereto. The recital of the appearance of the parties at the hearing implies the voluntary act of the appellant; and, if he desired to object that a hearing upon the cross bill could not be had until process had been issued and served, it was his duty then to make his position plain. The objection pointed out in the assignment of errors is, not that process had not issued, but that the court did not allow the appellant "any time * * * nor enter any rule upon him to answer the said cross bill," but without his consent ordered that his original bill stand as the answer. No other or different answer, except in matter of form, was possible, and manifestly no injury resulted from the peremptory action of the court. The objection that the cross bill contains no allegation of demand, at best, has only technical merit; and, in view of the denial of the debt and pledge contained in the original bill, an averment of demand was probably unnecessary.

The suggestions of variance between allegation and proof, and that the evidence does not sustain the finding in respect to the $44,-800 alleged to have been advanced by William M. Van Nortwick to Troendle, are better founded. The allegation "that the said sum of $44,800 was, at the time the 1,120 shares of stock were so issued to the said Troendle in his name, advanced by the said William M. Van Nortwick to the said Troendle at his request, so that the stock of said Troendle might be fully paid up stock," means an advancement of cash, and of that there was no evidence whatever. That, however, is as much a matter of form as of substance, and of less importance than the lack of evidence that upon any consideration Troendle became indebted to William M. Van Nortwick in a sum so large as that stated. The facts in brief are these: In the spring of 1895 there were two corporations,—the Western Paper-Bag Company of Wisconsin, and the Kaukauna Paper Company of Wisconsin. The Van Nortwicks were interested in both companies, but Troendle only in the first-named company, of whose capital stock, amounting to $50,000, 112 of the entire 500 shares stood in his name, but were pledged to secure the payment of his notes, then held by William M. Van Nortwick, for $2,800 and $4,600, given in part payment for the stock. Troendle then proposed, and William M. Van Nortwick consented to join him in, the organization of a new cor-

poration, called the Western Paper-Bag Company of Illinois, to which the assets of the two companies named should be transferred; and to that end William M. Van Nortwick purchased the interest of John S. Van Nortwick in the Kaukauna Paper Company, thereby becoming the sole owner of that property. For the purposes of the transfer the assets of the existing paper-bag company were estimated at $300,000, and the Kaukauna property at $200,000, making $500,000, the amount of the capital stock of the new company, which was divided into 5,000 shares, of $100 each. The capital stock of the original paper company being but $50,000, each share of stock therein entitled the holder to six shares of the new stock, and Troendle's 112 shares entitled him to 672 shares; but, in order to make his relative interest in the new company the same as in the old, William M. Van Nortwick consented to sell and to cause to be issued to him 448 additional shares, which, however, with the other 672 shares, with a blank indorsement by Troendle, he stipulated should remain in his possession as a collateral for Troendle's indebtedness to him. There can be no question on these facts that there was a sale by Van Nortwick to Troendle of the 448 shares, but, aside from the variance from the allegation of money advanced, the question is at what price was the sale made. The corporation having been just then organized, and the stock newly issued, under a statute which forbade the issue of stock by any corporation "except in consideration of money, or labor, or property estimated at its true money value, actually received by it, equal to the par value thereof" (Rev. St. Wis. § 1753), there might arise a presumption, in the absence of contrary evidence, that the stock was worth, and therefore was sold at, its par value; but on the evidence in this record it is impossible to believe that the assets of the two companies, which were turned over to the new company as the consideration for the issue of its stock, were estimated at their true money value. The estimated values, agreed upon in palpable evasion of the statute, were vastly exaggerated. There is in the record no direct evidence of those values, or, if there is such evidence, it has not been pointed out. There was no express agreement to pay the par value. Van Nortwick himself testified that no mention was made of the amount to be paid for the stock, and did not in direct terms assert even an understanding on his own part that par value was to be paid. He sold to his attorney about that time one hundred shares at sixty cents on the dollar, and that purchase the attorney testified Troendle induced him to make by fraudulent representations. In order to make the property of the original paper-bag company worth $300,000, "we had," said a witness, "to value the patents, trade-marks, and privileges, as we called them, at $150,000"; and there has been no suggestion or evidence that the $50,000 of stock which represented the property of that company was ever worth more than par in the market, or in any transaction other than the organization of the new company. The only ground disclosed on which it is possible to believe that Troendle intended to promise to pay for the stock its nominal or par value is the patent fact that he was totally irresponsible, and, never intending to perform, may

have been ready to buy at any price whatever could be obtained upon a promise to pay. But the case cannot be disposed of in that way, and the lack of proof in support of the cross bill cannot be supplied or compensated by the frequent references made to the very convincing proofs that Troendle, as a witness, was unworthy of belief. He is bound by no estoppel, and the decree on the cross bill must stand on its own merits, or must fall.

In so far as it was found and decreed that Troendle became indebted in the sum of $44,800 for the 448 additional shares of stock issued in his name, we deem the decree erroneous, and, there being in the record no satisfactory evidence of the value of that stock, the decree to that extent will be reversed, and the cause remanded, with directions to grant a reference to determine that value: provided, that within ten days the appellee may remit $20,000, and file with the clerk of this court proof of the remittitur, and thereupon the decree below shall stand affirmed. The costs of the appeal shall be paid by the appellant.